IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

SSS ENTERPRISES, INC., )
et al., )
 )
    Plaintiffs, )
 )
v. )  Civil Action No. 1:11-cv-1134
 )
NOVA PETROLEUM SUPPLIERS, )
LLC, et al., )
 )
    Defendants. )

### MEMORANDUM OPINION

This matter comes before the Court on Defendants' Nova Petroleum Realty, LLC, et al.'s ("Defendants") Motion for Partial Summary Judgment on Plaintiffs' Antitrust Claims and Defendants' Motion for Partial Summary Judgment as to Counts VI, VII, and VIII of the Third Amended Complaint.

Plaintiffs, eighteen[1] corporate and other entities that own and operate gasoline dealerships located in northern Virginia and the District of Columbia, allege eight causes of action against Defendants, wholesale distributors of Shell and Exxon branded motor fuels.[2]  Each Plaintiff leases its service station from one of the Defendants, and Defendants in turn supply Plaintiffs with motor fuels for resale at their stations.  In Plaintiffs' Third Amended Complaint, Plaintiffs allege two

---

[1] Initially, twenty-seven Plaintiffs filed suit in this case.

counts of attempted monopolization, two counts of monopolization, one count of violation of the Robinson-Patman Act (collectively the "Antitrust Claims"), one count of violation of the Petroleum Marketing Practices Act ("PMPA"), one count of breach of contract, and one count of violation of the Virginia Petroleum Products Franchise Act ("VPPFA").

This Court must grant summary judgment when a party fails to make a showing sufficient to establish the existence of any essential element of the party's case on which that party has the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). A movant need only show that there is an absence of evidence or support for the opposing party's case. See Celotex Corp., 477 U.S. at 325. If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the Court will grant summary judgment "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 324-25); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz,

Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citing Felty, 818 F.2d at 1128).

Additionally, the Fourth Circuit has held that "[s]ummary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Davis v. Thoman Motel Corp., 900 F.2d 28, 31 (4th Cir. 1990), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden of the moving party . . . may be discharged by simply pointing out 'that there is an absence of evidence to support the nonmoving party's case.'' Carr v. Deeds, 453 F.3d 593, 608 (4th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). That is, "[t]he moving party need not produce evidence, but simply can argue that there is an absence of evidence" by which the nonmovant can prevail at trial. Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390, 393 (4th Cir. 1994). If the moving party meets its burden, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." Shortt v. Immigration Reform Law Inst., 1:11-cv-144, 2011 WL 4738657, at *2 (E.D. Va. Oct. 3, 2011), citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Finally, in order to create a genuine issue of material fact, the non-moving party must rely on

admissible evidence. <u>Maryland Highways Contractors Ass'n, Inc. v. State of Maryland</u>, 933 F.2d 1246, 1257 (4th Cir. 1991).

To prevail on a Section 2 monopolization claim under the Sherman Act, a plaintiff must prove the 1) possession of monopoly power in a well-defined relevant market; 2) willful acquisition or maintenance of that power using exclusionary or predatory conduct; and 3) causal antitrust injury. <u>Advanced Health-Care Services., Inc. v. Radford Community Hospital</u>, 910 F.2d 139, 147 (4th Cir. 1990). To prevail on a Section 2 attempted monopolization claim, a plaintiff must prove that the defendant 1) has a dangerous probability of achieving monopoly power, 2) had a specific intent to monopolize the relevant market, and 3) engaged in exclusionary conduct. <u>Spectrum Sports v. McQuillan</u>, 506 U.S. 447, 456 (1993). Defendants argue that Plaintiffs lack sufficient admissible evidence to establish each element of their Antitrust Claims.

Monopoly power is an essential element of a Section 2 Sherman Act claim and must be evaluated within the relevant market. <u>E.I. du Pont de Nemours & Co. v. Kolon Indus. Inc.</u>, 637 F.3d 435, 453 (4th Cir. 2011). In this case, Plaintiffs allege that there is one product market and two geographic markets -- "gasoline sales, service, repairs and related services" in northern Virginia and the District of Columbia. Plaintiff defines northern Virginia as Fairfax and Arlington County and

the City of Alexandria. Despite Plaintiffs' characterization of the relevant markets, Plaintiffs performed no empirical market study to support that characterization. Plaintiffs do not have any data or evidence of cross-elasticity of demand or reasonable interchangeability, evidence of any customer switching in response to price changes or the area over which customers can turn for supplies, or evidence of transportation costs, sales, demand, industry recognition of geographic markets, or price relationships. Without this or any other such evidence, Plaintiffs are unable to adequately show the relevant markets. Indeed, even if Plaintiffs possessed empirical data, they do not have an individual qualified to apply that data to accepted antitrust or economics concepts as this Court has stricken the only expert report relied upon by Plaintiffs.

Even assuming Plaintiffs possessed evidence of a relevant market or markets, they must still be able to produce evidence that Defendants have or have a dangerous probability of obtaining monopoly power. M&M Medical Supplies & Service, Inc. v. Pleasant Valley Hospital, Inc., 981 F.2d 160, 168 (4th Cir. 1992). The Fourth Circuit has held that monopoly power or the dangerous probability of achieving it is demonstrated by the defendant's share of the relevant market. Advanced Health-Care Services, Inc., 910 F.2d at 147 (4th Cir. 1990). A share of seventy percent or greater is often required in monopolization

cases whereas a share of fifty percent or greater is often required in attempted monopolization cases. White Bag Co. v. Int'l Paper Co., 579 F.2d 1384, 1387 (4th Cir. 1974); M&M Med. Supplies & Serv., 981 F.2d at 168. In this case, Plaintiffs rely solely on the expert report previously stricken by this Court. In response to Defendants' interrogatories on this issue, Plaintiffs state that "[t]he facts upon which plaintiffs rely for their allegations of monopoly power and dangerous probability of success in achieving same in the relevant geographic markets are set forth in the Expert Report of Glenn B. Manishin . . . and plaintiffs' Third Amended Complaint." However, Plaintiffs cannot rely on their Complaint or a stricken expert report to prove their case. Without any pricing data, examination of competitive conditions, or evidence of relevant market shares, Plaintiffs are unable to support the proposition that Defendants have monopoly power or a dangerous probability of obtaining it.

Plaintiffs must also demonstrate that Defendants willfully acquired or maintained monopoly power to spur their growth or gains, as "distinguished from growth, or development, as a consequence of superior product, business acumen, or historical accident. Verizon Communications Inc. v. Curtis V. Trinko, LLP, 540 U.S. 398, 407 (2004). In order to show this, Plaintiffs must have admissible evidence or exclusionary conduct by

Defendants and evidence that Defendants possessed some willful intent for their exclusionary actions. Id.; Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 602 (1985). Even if Plaintiffs can establish that Defendants charged higher prices than Defendants' predecessors, such pricing practices alone are insufficient to establish exclusionary conduct. First, higher prices, even if charged by a monopolist, do not establish exclusionary conduct absent a duty to deal. Pacific Bell Telephone Co. v. Linkline Communications, Inc., 555 U.S. 438, 454-55 (2009). Also, there must be evidence of significant harm to the competitive process as a whole, and not just a competitor or consumer. Military Services Realty, Inc. v. Realty Consultants of Va., Ltd., 823 F.2d 829, 832 n.4 (4th Cir. 1987).

In this case, Plaintiffs have no evidence of any harm to competitors other than themselves, any harm to competition in the relevant geographic markets between all competitors, or that any consumer was injured. Claims that gasoline deliveries were unscheduled, that defendants were slow to make repairs, that rents were too high, and that credit card transactions were not processed quickly enough, cannot plausibly lead to a monopoly.

With respect to Plaintiffs' attempted monopolization claim, Plaintiffs must prove that Defendants had a "specific intent to destroy competition or build monopoly." Spectrum Sports, 506 U.S. at 456. Specific intent may be shown by direct evidence or

inferred from evidence of anticompetitive conduct. <u>M&M Med. Supplies & Serv.</u>, 981 F.2d at 166. However, Plaintiffs have no documents or other direct evidence of any intent by any Defendant to monopolize, nor do Plaintiffs have any other evidence from which such an intent could be inferred.

In addition to satisfying the elements under the Sherman Act, plaintiffs in antitrust cases must demonstrate that they have antitrust standing. Plaintiffs must accordingly show "antitrust injury," which is defined as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful." <u>Atlantic Richfield Co. v. USA Petroleum Co.</u>, 495 U.S. 328, 334 (1990); <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477, 489 (1977). To satisfy this burden, Plaintiffs must prove that there is damage to competition rather than just to a competitor and that any injury they suffer stems from harm to the competitive process. <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 206-13 (4th Cir. 2002). Again, in this case, Plaintiffs have no evidence or data to prove any harm to the competitive process and therefore lack antitrust standing.

Plaintiffs also allege price discrimination in violation of the Robinson-Patman Act. In order to make a prima facie case of price discrimination, a plaintiff must show that a defendant made at least two contemporary sales of the same commodity, at

different prices, to different purchasers. In this case, Plaintiffs cannot prove two contemporaneous sales. While defendants sell motor fuels to Plaintiffs, Defendants do not sell motor fuels to themselves. At Defendants' directly-operated stations, Defendants purchase motor fuels from Exxon or Shell, and they sell the products directly to motorists. There is therefore no contemporaneous sale by Defendants to Defendants' directly-operated station, much less a contemporaneous sale at a different price. Courts have refused to apply the Robinson-Patman Act in situations such as this. See E&L Consulting, Ltd. v. Doman Industries Limited, 472 F.3d 23, 32-33 (2nd Cir. 2006); see also Parrish v. Cox, 586 F.2d 9, 12 (6th Cir. 1978). Additionally, even if there were a sale by Defendants to their own company, such sales may not form the basis of a Robinson-Patman Act claim because a plaintiff cannot satisfy this element by comparing the price that it paid to the price that a defendant charges its own company. Havird Oil Co., Inc. v. Marathon Oil Co., Inc., 149 F.3d 283, 292 (4th Cir. 1998); Bell v. Fur Breeders Agricultural Co-op., 348 F.3d 1224, 1237 (10th Cir. 2003); Security Tire & Rubber Co. v. Gates Rubber Co., 598 F.2d 962, 967 (5th Cir. 1979). Therefore, Plaintiffs claim under the Robinson-Patman Act must fail.

In Count VI, Plaintiff Syed Ali ("Ali") asserts that his franchise was wrongly terminated by Nova Petroleum Suppliers,

LLC ("Nova Suppliers") under the PMPA. Under the PMPA, Ali, the franchisee, has the initial burden of proving that the franchise was terminated. The burden then shifts to the franchisor, Nova Suppliers, to establish as an affirmative defense that such termination was permitted under section 2802(b) of the PMPA. See, e.g., Santiago-Supulveda v. Esso Standard Oil Co. (Puerto Rico), Inc., 643 F.3d 1, 5 (1st Cir. 2011).

Under the Retail Facility Lease and Retail Sales Agreement, Nova Suppliers was obligated to sell motor fuel products to Ali, and Ali was obligated to purchase motor fuel products from Nova Suppliers. On 42 separate occasions, Ali's bank dishonored Nova Suppliers' ETFs for either rent or motor fuel payments for a total of $653,126.84. As a result, Nova Suppliers withdrew Ali's credit privileges and required him to pay for motor fuels on a cash on delivery basis. Thereafter, Ali made no gasoline purchases from Nova Suppliers.

On August 17, 2011, Nova Suppliers provided Ali with a Notice of Termination under the Petroleum Marketing Practices Act. On August 29, 2011, the effective date of the termination, Ali refused to surrender the station. Nova Suppliers instituted an unlawful detainer action against Ali in the General District Court for Fairfax County, and October 21, 2011, a judgment was entered against Ali for possession and back rent.

The PMPA prohibits a franchisor from terminating a franchise, 15 U.S.C. § 2802(a), unless the termination is based on one or more of the grounds enumerated in the PMPA and is in accordance with the notice requirements of 15 U.S.C. § 2804. The fulfillment of the notice requirements is undisputed. One ground for termination is the occurrence of "an event" which is relevant to the franchise relationship and on the basis of which termination of the franchise is "reasonable." 15 U.S.C. § 2802(b)(2)(c). Section 2802(b)(2)(c) then enumerates twelve relevant events, one of which is the "failure by the franchisee to pay the franchisor in a timely manner when due all sums to which the franchisor is legally entitled." 15 U.S.C. § 2802(c)(8). Failure to make timely payments for motor fuel or rent is a valid ground for termination under the PMPA. Hinkleman v. Shell Oil Co., 962 F.2d 372, 374-78 (4th Cir. 1992). Plaintiff's allegations regarding Defendant's motives in terminating the franchise cannot overcome the presumed reasonableness of the termination under one of the PMPA's specifically enumerated grounds, and therefore Count VI must fail. Id. at 377-78.

In Count VIII, Defendants AHZ of Chantilly, Inc. ("AHZ"), Jeawan, Inc. ("Jeawan"), and Van Dorn Auto Service, Inc. ("Van Dorn Auto") allege that Defendants are in violation of Va. Code Ann. 59.1-21.16:2(A) of the VPPFA because certain Defendants

established "fee/commission agent operators" at service stations within 1.5 miles of Plaintiffs' stations. This Section restricts refiners from operating retail service stations under a fee/commission agreement within 1.5 miles of the retail service stations of franchised service stations dealers, like Plaintiffs. The Code provides that the 1.5 mile distance is measured "by the most direct surface transportation route from the gas pump at the refiner's facility that is nearest a gas pump at the dealer's facility. . . ." VA Code Ann. 59.1-21.16.2(A).

AHZ alleges that the retail service station located at 13000 Fair Lakes Shopping Center in Fairfax, Virginia is operated by one of the Defendants under a fee or commission agent agreement, and that the station is located less than 1.5 miles from the station that AHZ operates at 12306 Lee Highway in Fairfax, Virginia. However, AHZ measured the straight-line distance between the two stations and not the distance measured by the shortest transportation route, as prescribed by the VPPFA. The shortest transportation route between the two stations is 1.9 miles and thus does not violate the VPPFA.

Van Dorn Auto and Jeawan also allege that certain Defendants operate stations under a fee or commission agent agreement within 1.5 miles of their respective service stations. However, both stations are dealer operated stations. Neither is

a fee or commission agent station operated on a consignment basis, and therefore neither is subject to the VPPFA's 1.5 mile distance restriction. Specifically, Defendant MVPR does not supply the retail service station under a fee or commission agent or consignment arrangement with the dealer at the Exxon Station, and Defendant Nova Petroleum Realty, LLC ("Nova Realty") does not supply either of the Shell Stations under a fee or commission agent or consignment arrangement with the dealers. Therefore, Defendants are not in violation of the VPPFA.

In Counts VI, VII, and VII, Plaintiffs allege that the two individual Defendants, Eyob "Joe Mamo ("Mamo") and David "Corky" Calhoun ("Calhoun") violated the PMPA, the VPPFA, and breached contracts with Plaintiffs. However, Plaintiffs do not dispute that Mamo and Calhoun should be dismissed from Counts VI, VII, and VIII, and accordingly, Defendants Mamo and Calhoun are dismissed.

In Count VII, Plaintiffs allege that Defendants had contractual obligations to provide maintenance and repair services at Plaintiffs' stations but breached their respective contracts. In Virginia, "[t]he elements of a breach of contract claim are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by

the breach of obligation. Filak v. George, 594 S.E.2d 610, 614 (Va. 2004). Similarly, in the District of Columbia, in order to succeed on a breach of contract claim, a plaintiff must establish "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009).

First, four Plaintiffs, Georgetown-Wisconsin, Inc., Metroil, Inc., N&B Company, Inc., and Northern Virginia Oil Company, Inc. make no claim that Defendants failed to perform maintenance or repair services. In response to interrogatories, these four Plaintiffs did not identify any failures on the part of any defendant to perform any contractual obligation and cannot produce any admissible evidence to do so. Therefore, Plaintiffs Georgetown-Wisconsin, Inc., Metroil, Inc., and N&B Company, Inc., and Northern Virginia Oil Company, Inc. do not have any basis for a breach of contract claim.

Second, Defendants have no contractual obligation to perform any repair or maintenance services to three Plaintiffs, Ticut Corp. ("Ticut"), Prime Auto, Inc. ("Prime Auto"), or 6948 King, Inc. Plaintiff Ticut has never had any relationship with any Defendant at any service station, and thus no Defendant owes any contractual duty to Ticut.

Plaintiff Prime Auto operates the retail service station located at 8851 Richmond Highway, in Alexandria Virginia. Plaintiff Prime Auto is a party to a Retail Sales Agreement with Defendant Nova Realty by assignment from Motiva Enterprises, LLC.  Defendant Nova Realty does not own, and therefore does not lease the station to Plaintiff Prime Auto.  The Agreement does not contain any provision that obligates Nova Realty to perform any repairs or maintenance at the station because Nova Realty had no contractual obligation, it cannot sustain a breach of contract claim.

Plaintiff 6948 King and Defendant MVPR entered into a Mutual Franchise Termination Agreement and Release on February 24, 2012, which terminated the franchise between the parties and their obligations to one another under the franchise.  The Release also released Defendant MVPR from "all claims and demands which each party has against the other . . . whether accrued or not accrued, under the Franchise Documents," along with $185.000.00 as consideration to enter the release. Therefore, having fully discharged Defendant MVPR from all claims under the lease, Plaintiff 6948 King cannot sustain a breach of contract claim.

Finally, overriding all of Plaintiffs' claims for breach of contract is the issue of damages.[2] In order to prevail on a breach of contract claim under Virginia and District of Columbia law, a plaintiff must establish damages, and the failure to do so is fatal to a breach of contract claim. Tsintolas Realty Co., 984 A.2d at 187; Adams v. A.B. & A., Inc., 613 A.2d 858, 860 (D.C. 1992); Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 136 (Va. 2009). In Isle of Wright County v. Nogiec, 704 S.E.2d 83, 85 (Va. 2011), the Court stated that the plaintiff has the "burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of recovery." Finally, in so proving and in order to create a genuine issue of material fact, a plaintiff must rely on admissible evidence. See Ziskie v. Mineta, 547 F.3d 220, 225 (4th Cir. 2008).

Damages must be measured by lost profits rather than lost revenues. See Banks v. Mario Industries of Virginia, Inc., 650 S.E.2d 687, 696 (Va. 2007). While not requiring mathematical precision in ascertaining a damages figure, a plaintiff must ". . . prove the amount of those damages by using a proper method and factual foundation for calculating damages." See

---

[2] Upon being given an opportunity by thie Court on June 15, 2012 at the initial Summary Judgment hearing to demonstrate what damages may exist under Plaintiffs' breach of contract claim, seven of the eighteen remaining Plaintiffs submitted affidavits to that end.

Martin v. Moore, 561 S.E.2d 672 (Va. 2002); Saks Fifth Ave. v. James., Ltd., 630 S.E.2d 304, 311 (Va. 2006). Lost profits cannot be deduced from gross revenues without evidence of the expenses to be deducted in order to determine the profits of the business. Boggs v. Duncan, 121 S.E.2d 359, 363-64 (Va. 1961).

In this case, Plaintiffs' evidence consists of mere estimates of damages without proper citation to the record. Indeed, when arriving at those estimates, Plaintiffs do not rely upon facts, data, or other information that would be admissible in evidence. Plaintiffs also do not attempt to demonstrate lost profits, but rather lost revenues, which again is an improper measure of damages.[3] Finally, Plaintiffs do not point to any evidence in the record from which their costs and expenses can be derived. Without meeting these fundamental damages requirements, Plaintiffs' claim for breach of contract must fail.

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.

An appropriate order shall issue.

---

[3] One Plaintiff, Van Dorn Auto, estimates an average profit margin. However, this estimated profit margin still lacks underlying data and evidence in the record. Van Dorn Auto also provides no expense figures from which a net profit could be determined.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
August 30, 2012